PEDELTY and others, Respondents, vs. WISCONSIN ZINC COMPANY, Appellant.

*January 12—January 30, 1912.*

*Trespass: Injunction: Pleading: Defensive matter: Contracts: Construction: Reformation: Right to run "waste water from mine" over land: Parol evidence: Damages: Findings by court: Judgment without prejudice to future action: Appeal: Harmless errors.*

1. In an action to restrain the discharge upon plaintiffs' land of water carrying "sludge" from defendant's mine and concentrating mill situated on adjoining land, and to recover past damages therefor, the complaint set out a contract, made prior to the erection of the mill, by which plaintiffs gave to defendant the privilege of pumping and running the waste water from its mine across plaintiffs' land; and then pleaded circumstances to show that waste water carrying sludge from the mill was not intended. *Held*, (1) that it was unnecessary to plead and avoid such contract, it being properly a matter of defense; (2) the complaint stated a good cause of action without showing grounds for, or asking relief in the nature of, reformation of the contract.

2. Mere ambiguity, if any, in the contract did not call for reformation, but only for construction; reformation being required only when, by fraud or mistake, the contract fails to embrace, even obscurely, the real agreement of the parties.

3. In their literal sense the words "waste water from their mine," in the contract in question, did not include water charged with sludge, and, even if ambiguous, the circumstances under which the agreement was made exclude such a construction.

4. In an action tried by the court, exceptions to the admission of evidence will not be considered on appeal, in the absence of clear indication that the result was based on improper evidence.

5. Neither evidence of conversations between the parties at or prior to the making of a contract, nor evidence of the facts and circumstances under which it was made, is admissible to vary or contradict their written agreement; but in case of uncertainty as to the meaning it may be read in the light of the surrounding circumstances, including the discussion and agreement or understanding at the time as to the import of a term used in the writing which is susceptible of a double meaning.

6. The free reception of improper evidence as to what was said by parties to a written contract, even in a case tried by the court, should be avoided.

7. In an action for injury to land by the deposit of foreign material thereon, the measure of damages is the diminished value of the land. The cost of removing the foreign material is merely evidentiary, and might exceed or fall short of the actual loss.

8. Where the findings as to all material matters are amply supported by the evidence, the judgment based thereon will not be disturbed because findings as to other and immaterial matters are not so supported.

9. In an action to recover for injury to land by the deposit of foreign material thereon and to restrain further injury, it was not erroneous, though unnecessary, to state in the judgment for plaintiffs that it was without prejudice to their right to recover for injury caused subsequent to the trial.

APPEAL from a judgment of the circuit court for Lafayette county: GEORGE CLEMENTSON, Circuit Judge. *Affirmed.*

Action to enjoin defendant from depositing waste material from a mineral concentrating mill on plaintiffs' land, and to recover compensation for damages caused by trespass of that nature thereon. The issues are indicated by the following epitome of the findings:

During the time material to the cause, plaintiffs were and are owners of the land in question. A considerable part thereof is bottom land, some 100 feet, more or less, below the

level of near-by land on which defendant operated a mine and concentrating mill so as to effect results hereafter mentioned.

In the course of defendant's operations it caused waste material from the mill to pass with water in which it was held in suspense, into a small pond from which, from time to time, it caused the water and settlings, called "sludge," to flow to and the sludge to be deposited in great quantities on plaintiffs' land.

While defendant was prospecting and experimenting to determine whether it would purchase the right to operate the mine and build and operate a mill thereat it caused water from its pumps to flow, in the natural course of drainage, from the mine down to and across plaintiffs' land. In respect thereto a written contract was made, whereby plaintiffs granted defendant the privilege of "pumping and running waste water from their mine" across said land.

The meaning of the term "waste water from their mine," as matter of fact, under the circumstances and as the parties understood, is water pumped from a mine in keeping it clear for operations, not water loaded with refuse matter, called "sludge," discharged from a concentrating mill. There was no such mill at the time the contract was made. Whether there would be, or defendant would acquire the right to operate the mine, was not certain. It needed, presently, the privilege of allowing water, pumped from the mine, to flow down to and across plaintiffs' land. Under those circumstances the contract was made. If the term "waste water from their mine" is ambiguous,—susceptible of the meaning, water charged with sludge discharged from a concentrating mill at a mine, as well as mere water pumped from the mine not carrying "sludge," under the circumstances shown by the evidence, the latter should be regarded as having been intended, and if not ambiguous the same result would follow.

After the contract was made, defendant acquired the right to operate the mine, built a concentrating mill thereat,

claimed the privilege of discharging sludge water from such mill and conducted its operations accordingly, against plaintiffs' protest; whereupon this action was commenced.

Up to a few days preceding the trial defendant had caused sludge to be deposited on plaintiffs' land to the extent of some 2,900 yards, practically destroying five and three-fourths acres thereof, and damaging in the whole some 19.27 acres of the bottom land to the extent of $60 per acre, and one acre of land above the lower level to the extent of $75, in all $1,231.20.

On such facts the court found plaintiffs to be entitled to judgment for damages as aforesaid, without prejudice as to the right to sue for damages caused subsequent to the date of the trial, January 19, 1911, to a permanent injunction as to further operations, to an injunction as to such operations pending the final decree, and to costs of the action.

Judgment was entered accordingly. Various exceptions were taken to findings and to refusals to find, and the cause with such exceptions of record and others taken on the trial, was removed to this court on appeal for a review of the judgment.

For the appellant there were briefs by *Kopp & Brunckhorst,* and oral argument by *L. A. Brunckhorst.* They cited, among other authorities, *Hart v. Hart,* 117 Wis. 639, 94 N. W. 890; *Forest L. Co. v. Hanley,* 94 Wis. 23, 68 N. W. 413; *Gilbert v. Stockman,* 76 Wis. 62, 44 N. W. 845; *Johnson v. N. W. Nat. Ins. Co.* 39 Wis. 87; Clark, Contracts (2d ed.) 406; *Perth Amboy T. C. Co. v. Ryan,* 68 N. J. Law, 474, 53 Atl. 699; *Jacob v. Day,* 111 Cal. 571, 44 Pac. 243; *Klueter v. Joseph Schlitz B. Co.* 143 Wis. 347, 128 N. W. 43; *Kipp v. Laun,* 146 Wis. 591, 131 N. W. 418; *Braun v. Wis. R. Co.* 92 Wis. 245, 66 N. W. 196.

For the respondents there was a brief by *Belle Quinlan* and *Orton & Osborn,* and oral argument by *P. A. Orton* and *Belle Quinlan.*

MARSHALL, J.  Notwithstanding the complaint contains much unnecessary language, some worse than unnecessary, as it presented matters not legitimate subjects of proof and tending not only to incumber but to confuse, there is, in the whole, stated, a cause of action to enjoin a continuous trespass and, incidentally, to recover damages caused by the wrong.  Such cause might well even have been stated without pleading the contract under which defendant sought to justify, leaving it to plead that for a defense, but the pleading of it at the start, in connection with circumstances indicating that, in one fair view, it did not confer the right to do the things complained of,—that waste water from a mine which defendant was permitted, in terms, to discharge to and over plaintiffs' land, was not waste water, carrying large quantities of sludge from a concentrating mill, which it wrongfully persisted in so discharging to the injury of such land, disclosed a remediable wrong.  The mere fact that the contract was ambiguous, if such were the fact, did not require relief in the nature of reformation.  If the proper construction of it,—conceding for the point need for construction,—would support appellant's claim, while a different construction was essential to respondents' theory, the situation was not one requiring judicial reformation of the writing from either viewpoint.  Reformation is proper when, by fraud or mistake, the writing does not discoverably express the contractual intent the parties mutually proposed incorporating into it. Such was not this case.  So the somewhat lengthy argument to the point that the complaint does not state a cause of action because the pleader did not ask for, or show by appropriate allegations, a right to reformation, needs little attention. Plaintiffs stood on the contract just as it was written, only pleading, perhaps unnecessarily and not beneficially, and in some respects possibly improperly, much to bear out their idea of the paper, and that such idea was discoverable in its language, viewed in the light of all the circumstances.

Little more need be said on the claim urged upon our attention that the complaint does not state a cause of action. Obviously, mere ambiguity does not call for reformation. In such a situation the real agreement intended to be, is stated in the paper, though obscurely, while when reformation is necessary, it is from the fact that without reformation, the real agreement cannot be read out of the writing. Here, doubtless, counsel for appellant was led to attack the complaint because of confusion produced by unnecessary allegations, rather suggesting fear that the paper, as drawn, did not fully, or discoverably, state the contract.

We may well say, in passing, that more study and care to adhere strictly to the letter and spirit of the Code would lighten the burden upon litigants and courts. The written law marks out a plain, easy road for the pleader to follow. The complaint in addition to giving the title of the cause, the names of the parties, and the place for trial, is required to contain "a plain and concise statement of the facts constituting the cause of action without unnecessary repetition" and "a demand for such judgment as the plaintiff supposes he is entitled to." If the pleading here were restated with strict harmony therewith, a cause of action of a particular character would be presented with such certainty as not to give rise to any thought of challenging it for insufficiency.

No time need be spent discussing exceptions to evidence. The case was tried by the court. Nothing appearing to the contrary it must be presumed that when the court came to close the litigation, only the proper evidence was considered. While it were better in the trial of such a case not to load up the record with a mass of immaterial and incompetent evidence, the mere reception of such, is of little consequence. The result being warranted by the competent evidence nothing more is essential. In that situation a party may better conserve time and expense, than to seek redress in this court for mere error in the admission of evidence in an equity case,

in the absence of clear indication of the result having been based on improper evidence. Such is not the case here as to the agreement the parties incorporated into the contract. The court reached the conclusion complained of from the literal sense of the paper, in the light of the situation in which it was made, to wit: the conclusion that "waste water from their mine" does not include water charged with sludge discharged from a mining concentrating mill; and further, if the term is susceptible of two meanings the circumstances characterizing the making of the agreement, indicate the thought contended for by respondents to have been the one in mind. It is considered the trial court is well supported in both views.

In connection with the foregoing it is appreciated that evidence of mere conversations between the parties when making the contract to aid in the construction of it was not proper. Plain as the rule seems to be, there is often difficulty in distinguishing between mere conversations, as the term is here used, and evidence of the facts and circumstances under which a contract was made and so characterizing it. Neither is competent to vary or contradict the writing. It must speak for itself, nothing being added and nothing taken from it, changing its meaning. But in case of uncertainty, it may be read in the light of circumstances forming, really, a part of it, and giving character to it. That does not include mere conversations respecting it. We will say, in passing, that one should appreciate that discussion and agreement or understanding at the time of making a contract as to the import of a term used in it which is susceptible of double meaning, is not within the field of mere conversations but is within that of characterizing circumstances. Some evidence of that character here was proper. *Ganson v. Madigan,* 15 Wis. 144; *Wenger v. Marty,* 135 Wis. 408, 116 N. W. 7; *Steele v. Schricker,* 55 Wis. 134, 12 N. W. 396; *Johnson v. Pugh,* 110 Wis. 167, 85 N. W. 641; *Hackley Nat. Bank v. Barry,*

139 Wis. 96, 120 N. W. 275; *Burton v. Douglass,* 141 Wis. 110, 123 N. W. 631; *Klueter v. Joseph Schlitz B. Co.* 143 Wis. 347, 128 N. W. 43.

So it must be conceded that evidence which the court received quite freely of what was said between the parties in respect to the contract, was improper. It were better to have excluded it. The free reception of it in face of a rule so plain, suggests willingness to violate it and moved counsel for appellant to think the final result was reached by the consideration of improper evidence.

The suggestion is made that the amount awarded is excessive, and was arrived at by a wrong rule. Neither suggestion seems to have sufficient merit to require much attention. The diminished value of the land by reason of the wrong, was the proper basis for the assessment. The cost of removing the foreign material, which appellant insists was the proper measure, was in fact evidentiary only. A situation might well be created such that the cost of restoration would exceed the value of the property originally, or as restored. In that case it could not be well said that such cost would be the measure of recoverable loss. The actual loss sustained is the just measure of reparation in any case. That may well be arrived at in such a case as this by proving the former value and the cost of accomplishing the restoration, or by proving the value of the land in its former and in its changed condition. Either method would reach the same result in case of the cost of restoration being less than the value of the restored property, while the cost of restoration, which appellant contends is invariably the proper measure of damages, might lead to a result very unjust to the wrongdoer,—it might mulct him in a far greater sum than his adversary actually lost.

Complaint is made that the findings are not supported by the evidence. There is some merit in that, viewing them in all details, but there is much unnecessary particularity

therein.   Matters are discussed and found which are imma-
terial.   If the findings were concise;—went no further than
was required, were composed of a few folios covering, singly,
the essential facts constituting plaintiffs' ground for relief,
instead of being so unnecessarily lengthy, much of the com-
plaint in regard to them would not have even the semblance
of ground to rest upon.

The actual contract was in writing.   The circumstances
under which it was made were not in dispute.   They were
few and could be briefly stated.   Those were all the material
matters of fact, except the amount of damages.   The con-
struction of the contract was matter of law.   Thus the case
was in a very narrow compass when stripped down to the
things material.   As regards such matters the findings are
amply supported by the evidence.   In fact most of them,
aside from the question of damages, are without dispute.   A
very simple case may easily be made very complicated and
troublesome by the way it is presented by pleadings and evi-
dence and disposed of by opinion and findings.

Complaint is made because the court rendered judgment
without prejudice to plaintiffs' right to seek redress for any
wrong done by defendant in respect to the land subsequent
to the date of the trial.   No merit is perceived in that.   The
saving clause of the decree was unnecessary and immaterial.
Had it been entirely omitted the result would be the same.
In any event, the decree could only remedy wrong committed
prior to the entry of it, substantially down to the time of trial.
Had it been framed so as to cut off the right to redress subse-
quent wrongs it would have been to that extent improper.

The other matters discussed in the briefs of counsel do not
appear to have sufficient significance to warrant further ex-
tending this opinion.

*By the Court.*—Judgment affirmed.