GENERAL CASUALTY COMPANY OF WISCONSIN, Plaintiff-Respondent-Petitioner,

v.

Donald A. HILLS, d/b/a Hills Standard, Defendant-Appellant,

ABC INSURANCE COMPANY and DEF Insurance Company, Defendants.

Supreme Court

*No. 95–2261. Oral argument January 28, 1997.—Decided April 22, 1997.*

(Also reported in 561 N.W.2d 718.)

For the plaintiff-respondent-petitioner there were briefs by *Thomas N. Harrington, Lee Anne N. Conta,* Laura E. Schuett and *Cook & Franke, S.C.,* Milwaukee and oral argument by *Thomas N. Harrington.*

For the defendant-appellant there was a brief by *Matthew A. Biegert* and *Doar, Drill & Skow, S.C.,* New Richmond and oral argument by *Matthew A. Biegert.*

Amicus curiae brief was filed by *Timothy J. Muldowney, Jeffrey J. Kassel* and *LaFollette & Sinykin,* Madison and *Richard M. Hagstrom* and *Zelle & Larson,* Minneapolis, MN for the Alliance of American Insurers.

Amicus curiae brief was filed by *Richard C. Ninneman, Jeffrey O. Davis, Joan M. Harms* and *Quarles & Brady,* Milwaukee for the Wisconsin Realtors Association, Building Owners and Managers Association and the Wisconsin Association for Environmental Insurance Protection.

Amicus curiae brief was filed by *Raymond R. Krueger, Cynthia E. Smith* and *Michael Best & Friedrich,* Milwaukee for the Association of Environmentally Responsible Businesses, Inc., Associated General Contractors of Greater Milwaukee, Inc., Counsel of Small Business Executives, Petroleum Marketers Association of Wisconsin, Wisconsin Fabricare Institute, Inc., Wisconsin Automotive Trade Association and Wisconsin Federation of Cooperatives.

Amicus curiae was filed by *Michael D. Flanagan, Thomas C. Ewing, Mary K. Braza, Lisa S. Neubauer* and *Foley & Lardner,* Milwaukee for The Wisconsin Policyholders Association.

169

Amicus curiae was filed by *Robert C. Burrell, Stephen M. Compton* and *Borgelt, Powell, Peterson & Frauen, S.C.*, Milwaukee and of counsel *Laura A. Foggan, Matthew Chavez* and *Wiley, Rein & Fielding*, Washington, D.C., for the Wisconsin Insurance Alliance and National Association of Independent Insurers.

¶ 1. N. PATRICK CROOKS, J. General Casualty Company of Wisconsin (General Casualty) seeks review of a published decision of the court of appeals,[1] which reversed a judgment of the Circuit Court of Barron County, Judge Edward R. Brunner, presiding. The circuit court granted summary judgment in favor of General Casualty on the grounds that it has no duty to defend or indemnify its insured, Donald Hills (Hills), in a third-party action seeking recovery for environmental response costs. The circuit court concluded that no duty to defend or indemnify exists because, under *City of Edgerton v. General Cas. Co.*, 184 Wis. 2d 750, 517 N.W.2d 463 (1994), *cert. denied*, 115 S. Ct. 1360, 2615 (1995) (hereinafter " *Edgerton*"), the action is not a suit seeking "damages." The court of appeals reversed, concluding that because parties other than the Environmental Protection Agency (EPA) or the Department of Natural Resources (DNR) are seeking monetary compensation for contamination Hills allegedly inflicted on property that does not fall within the policies' owned-property exclusion,[2] the action is a suit

---

[1] *General Cas. Co. v. Hills*, 201 Wis. 2d 1, 548 N.W.2d 100 (Ct. App. 1996) (hereinafter "*Hills*").

[2] The policies at issue contain an owned-property exclusion, which excludes coverage for:

 a. Property owned, rented or occupied by the "insured;"

seeking "damages" under the policies at issue. We agree with the court of appeals that our decision in *Edgerton* does not relieve General Casualty of its duty to defend Hills, and that this interpretation is in accord with the expectations of a reasonable insured. Thus, we affirm the decision of the court of appeals.

## I.

¶ 2. The relevant facts are not in dispute. Since 1961, Hills has owned and operated Don's Standard[3] in Rice Lake, Wisconsin. In the regular and normal course of business, Hills contracted with Arrowhead Refining Company (Arrowhead) to pick up waste from Don's Standard. Arrowhead transported the waste and deposited it at Arrowhead's waste oil recycling business in Hermantown, Minnesota ("Arrowhead site" or "site"). Arrowhead operated this business from approximately 1961 to 1977.

¶ 3. In September 1984, the EPA placed the Arrowhead site on the National Priorities List[4] by pub-

b. Property loaned to the "insured;"

c. Property held for sale or being transported by the "insured;" or

d. Property in the "insured's" care, custody or control.

(R.6 at 105.) All of the policies contain exclusions with substantially similar language. (*See id.* at 7, 20, 33, 64, 149, 194.)

[3] As the court of appeals noted, the record contains discrepancies as to whether Hills' business is called "Don's Standard" or "Hills Standard." *Hills*, 201 Wis. 2d at 4 n.1. In accord with the court of appeals' decision, we refer to the business as "Don's Standard."

[4] *See* 40 C.F.R. pt. 300, app. B. (1985). The National Priorities List is a list of hazardous waste sites posing the greatest threat to health, welfare, and the environment. The Arrowhead site remains on the list today. *See* 40 C.F.R. pt. 300, app. B (1996).

lication in the Federal Register. *See* 49 Fed. Reg. 37084 (1984). The EPA then began a Remedial Investigation and Feasibility Study, which determined that the recycling activities of Arrowhead had contaminated the site.

¶ 4. In 1989, the United States filed suit in the United States District Court for the District of Minnesota, Fifth Division, against Arrowhead and fourteen additional defendants, seeking declaratory relief and recovery of response costs. On January 30, 1991, thirteen of these defendants, including Arrowhead,[5] filed a third-party complaint against Hills and hundreds of other parties,[6] seeking recovery for response costs associated with the site. In the third-party complaint, Arrowhead makes four specific claims against Hills, based on: (1) the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA);[7] (2) the Minnesota Environmental Response and Liability Act (MERLA);[8] (3) common law contribution; and, (4) unjust enrichment.

¶ 5. Hills and General Casualty entered into a series of "combination service station" policies from June 18, 1976, to June 18, 1979, and a series of "garage" policies from June 18, 1988, to June 18, 1991.[9]

---

[5] For the remainder of this opinion, these third-party plaintiffs are collectively referred to as "Arrowhead," consistent with the court of appeals' decision. *See Hills*, 201 Wis. 2d at 4.

[6] Not all third-party plaintiffs filed claims against all third-party defendants.

[7] CERCLA is codified at 42 U.S.C. §§ 9601–75 (1994).

[8] MERLA is codified at Minn. Stats. §§ 115B.01–115B.51 (1996).

[9] Combination service station and garage policies are types of liability insurance. *See* 1 Lee R. Russ, *Couch on Insurance* § 1:34, at 48–49 (3d ed. 1996). Accordingly, these policies serve

The policies in force from June 18, 1976 to June 18, 1979 provide:

> General Casualty Company. . .[a]grees with the insured. . .[t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined.

(R. 6 at 6, 19, 32.) Likewise, the policy in force from June 18, 1987 to June 18, 1988 provides:

> **We** will pay all sums the **insured** legally must pay as damages because of **bodily injury** or **property damage** to which this insurance applies caused by an **accident** and resulting from **garage operations**.

(R. 6 at 63.) (Emphasis original in policies.) The policies in force from June 18, 1988 to June 18, 1991 contain the same language as the 1987–88 policy. (R. 6 at 103, 147, 192.)

¶ 6.　On January 19, 1995, General Casualty filed a declaratory judgment action, requesting the circuit court to determine that General Casualty has no duty to defend or indemnify Hills in the third-party action under these policies. On February 16, 1995, Hills coun-

---

the same purpose as a comprehensive general liability (CGL) policy, which is to protect an insured from negligent acts resulting in damage to third parties. *See id.* (explaining purpose of garage policies); Arnold P. Anderson, *Wisconsin Insurance Law*, § 5:14, at 136 (3d ed. 1990 & Supp. 1997) (explaining purpose of CGL policies). Therefore, the liability portion of combination service station and garage policies contains language that is nearly identical to CGL policies.

terclaimed, asserting that General Casualty had breached its contractual duties to defend and indemnify him, and had acted in bad faith. On May 8, 1995, General Casualty moved for summary judgment, on the grounds that the third-party action seeks recovery for response costs, and therefore is not a suit seeking "damages," based on *Edgerton*.[10] The circuit court agreed, granting the motion for summary judgment at a hearing held on June 12, 1995.

¶ 7. The court of appeals reversed. The court of appeals emphasized the factual distinctions between this case and *Edgerton*. In particular, the court of appeals indicated that in *Edgerton*, the DNR sent the insureds a letter directing them to propose a plan to remediate the landfill. *General Cas. Co. v. Hills*, 201 Wis. 2d 1, 11, 548 N.W.2d 100 (Ct. App. 1996) (hereinafter "*Hills*"). In addition, the court of appeals noted that unlike the insureds in *Edgerton*, Hills does not own, lease, or control the contaminated property. *Id.* at 10–12. Accordingly, the court found it significant that the contaminated property does not fit within the owned-property exclusion contained in the policies. Based on these factual distinctions, the court of appeals concluded that the action is a suit seeking "damages." *Id.* at 12. The court indicated that this result is consistent with the purpose of a comprehensive general liability (CGL) policy. *Id.*

II.

¶ 8. The issue before us is whether the action Arrowhead filed against Hills seeks "damages" as that word is used in the insurance policies General Casualty

_____

[10] General Casualty did not assert any other grounds in support of its motion for summary judgment.

issued to Hills. Accordingly, we emphasize from the outset that the focus of this case is on the interpretation of insurance policies, not on environmental law.

¶ 9. In the absence of extrinsic evidence, this court determines the interpretation of an insurance policy as a matter of law, without deference to the lower courts. *See, e.g., Sprangers v. Greatway Ins. Co.*, 182 Wis. 2d 521, 532, 514 N.W.2d 1 (1994); *Maas v. Ziegler*, 172 Wis. 2d 70, 79, 492 N.W.2d 621 (1992). In addition, when reviewing a grant of summary judgment, this court applies the standards set forth in Wis. Stat. § 802.08, in the same way the circuit court applies them. *See, e.g., Sprangers*, 182 Wis. 2d at 531; *Maas*, 172 Wis. 2d at 78.

¶ 10. In general, the interpretation of an insurance contract is controlled by principles of contract construction. *See, e.g., Kuhn v. Allstate Ins. Co.*, 193 Wis. 2d 50, 60, 532 N.W.2d 124 (1995); *Maas*, 172 Wis. 2d at 79. The primary objective in interpreting a contract is to ascertain and carry out the intentions of the parties. *See, e.g., Maas*, 172 Wis. 2d at 79; *Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156 (1984). "Of primary importance is that the language of an insurance policy should be interpreted to mean what a reasonable person in the position of the insured would have understood the words to mean." *Sprangers*, 182 Wis. 2d at 536; *accord, e.g., Kuhn*, 193 Wis. 2d at 60; *Kremers-Urban Co.*, 119 Wis. 2d at 735.

¶ 11. This case specifically involves the duty to defend.[11] "An insurer's duty to defend the insured in a third-party suit is predicated on allegations in a complaint which, if proven, would give rise to the possibility of recovery that falls under the terms and conditions of the insurance policy." *School Dist. of Shorewood v. Wausau Ins. Cos.*, 170 Wis. 2d 347, 364, 488 N.W.2d 82 (1992) (hereinafter *"Shorewood"*); *accord Elliott v. Donahue*, 169 Wis. 2d 310, 320–21, 485 N.W.2d 403 (1992). Thus, the duty to defend is controlled by the nature of the claim, not by the claim's merits. *See Shorewood*, 170 Wis. 2d at 364; *Elliott*, 169 Wis. 2d at 321. If there is any doubt regarding the duty to defend, it must be resolved in favor of the insured. *See Shorewood*, 170 Wis. 2d at 364; *Elliott*, 169 Wis. 2d at 321.

¶ 12. Therefore, in order to decide whether General Casualty has a duty to defend Hills, we must

---

[11] General Casualty claims that it has no duty to defend or indemnify Hills. "Policies of liability insurance impose two duties on the insurer with respect to the insured-the duty to indemnify and the duty to defend." *Wood v. American Fam. Mut. Ins. Co.*, 148 Wis. 2d 639, 651, 436 N.W.2d 594 (1989) (quoting *Gross v. Lloyds of London Ins. Co.*, 121 Wis. 2d 78, 84, 358 N.W.2d 266 (1984)), *overruled in part on other grounds*, *Matthiesen v. Continental Cas. Co.*, 193 Wis. 2d 192, 532 N.W.2d 729 (1995) (emphasis omitted). The duty to defend is broader than the duty to indemnify, because the duty to defend is triggered by arguable, as opposed to actual, coverage. *See Newhouse v. Citizens Sec. Mut. Ins. Co.*, 176 Wis. 2d 824, 834–35, 501 N.W.2d 1 (1993); *Elliott v. Donahue*, 169 Wis. 2d 310, 320, 485 N.W.2d 403 (1992). In this case, we only consider General Casualty's duty to defend, because the duty to indemnify issue must await resolution of the claim brought by Arrowhead against Hills. *See Newhouse*, 176 Wis. 2d at 834–36.

compare the third-party complaint to the insurance policies at issue and determine whether, if the allegations are proven, General Casualty will be required to pay the resulting judgment. *See Shorewood,* 170 Wis. 2d at 364–65. General Casualty contends that it would not be required to pay a resulting judgment, because the policies limit coverage to all sums Hills is legally obligated to pay "as damages," and the word "damages" does not include reimbursement for remediation and response costs.[12]

¶ 13. This court has considered the "as damages" insurance language in two recent cases. First, in *School Dist. of Shorewood v. Wausau Ins. Cos.,* 170 Wis. 2d 347, 488 N.W.2d 82 (1992), this court considered whether a third-party action seeking declaratory and injunctive relief to remedy alleged intentional discrimination and racial segregation by two school districts was a suit seeking "damages" under an insurance policy. *Id.* at 355–56. The court concluded that the word "damages" as used in an insurance policy "unambiguously means legal damages. It is legal compensation for past wrongs or injuries and is generally pecuniary in nature." *Id.* at 368.

¶ 14. The *Shorewood* court further explained that judicial remedies fall into four major categories: damages remedies, restitutionary remedies, coercive remedies, and declaratory remedies. *Id.* at 368. The court defined damages remedies as substitutionary, remedial relief for past wrongs. In particular, the court stated:

> The damages award is substitutionary relief, that is, it gives the plaintiff money mainly by way of

---

[12] Note that the policies at issue do not define the phrase "as damages" or the term "damages."

> compensation, to make up for some loss, but one ordinarily may be measured in money. . . . **By way of contrast, specific remedies in law or equity, such as replevin and ejectment at law, or injunction or specific performance in equity, are not substitute remedies at all,** but attempt to give the plaintiff the very thing to which he was entitled.

*Id.* at 369 (quoting Dobbs, *Handbook on the Law of Remedies* § 3.1, at 135 (1973)) (emphasis original). However, the court indicated that "[a] classification based on the form of the action, as either equitable or legal, is irrelevant" to the determination of whether the remedy sought constitutes damages. *Id.* Instead, the focus is on the nature of the remedy sought. *Id.* at 369–70. Specifically, damages "are remedial in nature, not preventive." *Id.* at 370. Applying these principles, the court determined that the costs of complying with an injunction are not damages, because an injunction is designed to prevent injury, not compensate for past wrongs through substitutionary relief. *Id.* at 374–75.

¶ 15. Second, in *City of Edgerton v. General Cas. Co.*, 184 Wis. 2d 750, 517 N.W.2d 463 (1994), *cert. denied*, 115 S. Ct. 1360, 2615 (1995), this court considered whether the insureds' receipt of letters from the Wisconsin DNR requesting remediation of a contaminated site triggered the insurers' duty to defend. Specifically, Edgerton Sand & Gravel (ES&G) owned a landfill in Rock County, which was leased by the City of Edgerton (City) as a landfill site from 1968 to 1984.[13] *Id.* at 758–59. In 1978, the DNR informed ES&G by

---

[13] As specified by this court in *Edgerton*, the site of the landfill was owned by the Sweeney family, who also owned ES&G. *City of Edgerton v. General Cas. Co.*, 184 Wis. 2d 750, 758 n.5, 517 N.W.2d 463 (1994), *cert. denied*, 115 S. Ct. 1360,

letter that it suspected contamination in and around the landfill site. *Id.* at 759, n.7. On December 30, 1984, after volatile organic compounds (VOCs) were detected in the groundwater, ES&G closed and capped the landfill. *Id.* at 759–60. On June 22, 1989, the EPA notified ES&G and the City by letter that that it was investigating the site, and requested that they provide certain information to the DNR. *Id.* at 760. In February 1990, the DNR sent certified letters to the City and ES&G, giving each thirty days to propose a plan for remediation. *Id.* at 760. ES&G and the City forwarded these letters to their insurance carriers, who denied coverage and a defense to both parties. *Id.* at 762. ES&G and the City subsequently filed a declaratory action, seeking a determination that their insurers had a duty to defend and indemnify them for any liability arising out of DNR or EPA claims. *Id.*

¶ 16. This court initially determined that the letters ES&G and the City received from the DNR did not constitute a "suit" as that term was used in their insurance policies. *Id.* at 766–82. This court next turned to the issue of whether remediation and response costs assigned under CERCLA or equivalent state statutes constitute "damages" as that term was used in the insurance policies. The court indicated that remediation and response costs "are, by definition, considered to be equitable relief and reflect a congressional intent to differentiate between cleanup or response costs. . .and damages for injury, destruction, or the loss of natural resources. . . ." *Id.* at 784. The court therefore determined:

2615 (1995) (hereinafter "*Edgerton*"). The property, therefore, was within the owned-property exclusion of the policies at issue.

> [A]s an equitable form of relief, response costs were not designed to compensate for past wrongs; rather, they were intended to deter any future contamination by means of injunctive action, while providing for remediation and cleanup of the affected site. This type of relief is distinct from that which is substitutionary—monetary compensation provided to make up for a claimed loss.

*Id.* at 785 (citing *Shorewood*, 170 Wis. 2d at 369). Thus, the court held the insurers did "not have a duty to defend against the actions of the EPA and the DNR, requesting environmental cleanup, because no suit seeking damages has been filed against the insureds." *Id.* at 786.

¶ 17. *Shorewood* and *Edgerton* demonstrate that in order to determine whether an action seeks "damages," we must consider the nature of the relief being sought—whether it is remedial, substitutionary relief that is intended to compensate for past wrongs, or preventive and focusing on future conduct. Applying this definition to the present case, we consider it relevant that this case is factually distinguishable from *Edgerton* and *Shorewood* in three pertinent ways. First, unlike *Edgerton*, neither the EPA nor DNR have requested or directed Hills to develop a remediation plan or incur remediation and response costs under CERCLA or an equivalent state statute. Second, unlike *Edgerton*, the contaminated property in this case does not fit within the owned-property exclusion contained in the insurance policies.[14] Third, unlike *Shorewood*, Hills is not being sued to comply with an injunction.

---

[14] The *Edgerton* court did not reach the owned-property exclusion. However, the court did indicate that the Sweeney family, who also owned ES&G, owned the landfill site, and that the City leased the landfill site. Therefore, the contaminated

¶ 18. In this case, Arrowhead does not want Hills to take, or refrain from taking, any action. Instead, Arrowhead seeks substitutionary, monetary relief to compensate for the losses they may incur. The remedy that Arrowhead seeks is intended to compensate for past wrongs, not to prevent future harm. Thus, under the definition set forth and applied in *Shorewood* and *Edgerton*, Arrowhead is seeking "damages" from Hills as that word is used in the insurance policies at issue. Accordingly, *Edgerton* does not relieve General Casualty of its duty to defend Hills.

¶ 19. Our conclusion that Arrowhead is seeking legal damages to compensate Arrowhead for past wrongs is in accord with established Wisconsin precedent. It has long been the law of this state that the cost of repairing and restoring damaged property and water to its original condition is a proper measure of **compensatory** damages. *See Jost v. Dairyland Power Coop.*, 45 Wis. 2d 164, 172 N.W.2d 647 (1969); *Anstee v. Monroe Light & Fuel Co.*, 171 Wis. 291, 177 N.W. 26 (1920); *Pedelty v. Wisconsin Zinc Co.*, 148 Wis. 245, 134 N.W. 356 (1912); *Fortier v. Flambeau Plastics Co.*, 164 Wis. 2d 639, 476 N.W.2d 593 (Ct. App.), *review denied*, 479 N.W.2d 172 (1991). *See generally* 1 Russell M. Ware, *The Law of Damages in Wisconsin* §§ 18.4 & 18.22 (1988 & Supp. 1996); Wis JI—Civil 1804. For example, in *Nischke v. Farmers & Merchants Bank & Trust*, 187 Wis. 2d 96, 522 N.W.2d 542 (Ct. App.), *review denied*, 527 N.W.2d 335 (1994), the court of appeals concluded that if Farmers & Merchants Bank, the owner of an underground storage tank, negligently caused a leak in the tank and thereby polluted

land at the site would appear to fall within the owned-property exclusion of both ES&G and the City's CGL policies.

Nischke's property, Nischke could recover the costs she expended to remediate her land in response to letters she received from the DNR. *Id.* at 120. The court indicated: " [A]ssuming the bank was the negligent cause of the leak, its negligence has made Nischke legally obligated to incur costs to restore her property. These are recoverable as the normal measure of **compensatory damages** . . . ." *Id.* (emphasis added).

¶ 20. The passage of CERCLA and similar state statutes has not changed the law of remedies.[15] Therefore, regardless of the nature of the underlying claim made by the United States against Arrowhead, the fundamental remedy Arrowhead seeks from Hills is compensatory damages for the past injuries he allegedly inflicted on the Arrowhead site.

¶ 21. Consequently, the nature of the relief being sought by Arrowhead is different than that sought by the DNR in *Edgerton*. We therefore reject General Casualty's assertion that we must overrule *Edgerton* in order to hold that the suit in this case seeks "damages." *Edgerton* continues to stand for the proposition that receipt of a letter from the EPA or DNR requesting a party to propose a remediation plan does not constitute a "suit seeking damages."

¶ 22. We also reject General Casualty's contention that we must overrule *Whirlpool Corp. v. Ziebert*,

---

[15]*See* 42 U.S.C. § 9652(d) ("Nothing in this Act shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants."); Wis. Stat. § 144.442(11) ("No common law liability. . .for damages resulting from a site or facility is affected in any manner by this section. The authority, power and remedies provided in this section are in addition to any authority, power or remedy provided. . .at common law.").

197 Wis. 2d 144, 539 N.W.2d 883 (1995), in order to hold that the action seeks "damages." In *Whirlpool Corp.*, this court concluded that a family member exclusion clause in a homeowner's insurance policy barred coverage for a third-party contribution claim brought against the insured.[16] *Id.* at 147. Accordingly, *Whirlpool Corp.* involved an entirely different insurance provision than is at issue here. Because *Whirlpool Corp.* is distinguishable from the present case, we need not overrule it.

¶ 23. We emphasize that our interpretation of the "as damages" language in this case is in accord with the "expectations of a reasonable person in the position of the insured." *Sprangers*, 182 Wis. 2d at 536; *accord, e.g., Kuhn*, 193 Wis. 2d at 60; *Kremers-Urban Co.*, 119 Wis. 2d at 735. A reasonable person in the position of Hills would expect coverage due to the purpose of liability policies. "The CGL policy was designed to protect an insured against liability for negligent acts resulting in

---

[16] Specifically, in *Whirlpool Corp. v. Ziebert*, 197 Wis. 2d 144, 539 N.W.2d 883 (1995), the insured brought an action against Whirlpool, the manufacturer of a meat grinder, for injuries the meat grinder allegedly caused to the insured's daughter. *Id.* at 147–48. Whirlpool subsequently brought a contribution action against the insured and the insured's homeowner's liability insurer, alleging that the insured was negligent in the supervision of her daughter. *Id.* at 148. A family exclusion clause in the insurance policy provided that the insurer did "not cover bodily injury to an insured person. . .whenever any benefit of this coverage would accrue directly or indirectly to an insured person." *Id.* at 153. The court concluded that this provision excluded coverage because the contribution action, if successful, would indirectly benefit the daughter. *Id.* at 153–55.

damage to third parties."[17] Arnold P. Anderson, *Wisconsin Insurance Law* § 5.14, at 136 (3d ed. 1990 & Supp. 1997); *accord Bausch & Lomb Inc. v. Utica Mut. Ins. Co.*, 625 A.2d 1021, 1033 (Md. 1993); Robert D. Chesler et al., *Patterns of Judicial Interpretation of Insurance Coverage for Hazardous Waste Site Liability*, 18 Rutgers L.J. 9, 14 (1986). A general liability policy is distinct from an "all-risks" policy, which also covers losses sustained by the insured. *Bausch & Lomb, Inc.*, 625 A.2d at 1033. This is evidenced by the words of the policies at issue. For example, General Casualty agreed to "pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies caused by an accident and resulting from garage operations." (R. 6 at 63.) (Emphasis omitted.)[18] "Property damage" is defined as "the damage to or loss of use of tangible property." (*Id.*) The policies expressly exclude coverage for property owned, rented, or occupied by the insured, among other things. *See supra* 170–71 n. 2 of this opinion. Therefore, General Casualty agreed to cover only those damage that Hills negligently caused to a third party's property.

¶ 24. Accordingly, because liability policies are intended to protect insureds from negligent acts resulting in damage to third parties, "an insured, when buying comprehensive general liability coverage, expects that **any** activity resulting in unintended and unexpected. . .property damage to a third party will be covered unless it is specifically excluded." Chesler,

---

[17] As previously explained, *see supra* 172–73 n. 9, combination service station and garage policies serve the same purpose as CGL policies.

[18] All of the policies contain similar language. *See supra* 172–73.

*supra*, at 69–70 (emphasis added). Thus, a reasonable insured in the position of Hills would interpret the phrase "as damages" to include coverage for a claim, brought by parties other than the EPA or DNR, which obligates him or her to pay monetary sums because of the negligent contamination of property that does not fit within the owned-property exclusion, since this is the very reason that an individual purchases liability coverage.

¶ 25. In conclusion, we hold that because parties other than the EPA and DNR are seeking compensatory, monetary relief for losses they may incur due to Hills' alleged past contamination of property that does not fit within the policies' owned-property exclusion, the action seeks "damages" as that word is used in the policies at issue. Therefore, our decision in *Edgerton* does not relieve General Casualty of its duty to defend Hills. This interpretation is in accord with the expectations of a reasonable insured in the position of Hills. We therefore remand this case to the circuit court for further proceedings consistent with this decision.

*By the Court.*—The decision of the court of appeals is affirmed and the cause is remanded.

¶ 26. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*concurring*). I agree with the result reached by the majority opinion. I write separately to point out that I believe the majority opinion marks a significant

step towards overruling *Shorewood*,[1] upon which *Edgerton*[2] relied in its dictum defining damages.

¶ 27. Rather than leaving *Shorewood* and *Edgerton* to be overturned in small measures by debatable judicial distinctions, I would embrace the inevitable now by expressly overruling *Shorewood* and thereby recognizing the limited application of the *Edgerton* decision on damages.

---

[1] *School Dist. of Shorewood v. Wausau Ins. Co.*, 170 Wis. 2d 347, 488 N.W.2d 82 (1992) (on motion for reconsideration; withdrawing 168 Wis. 2d 390, 484 N.W.2d 314).

[2] *City of Edgerton v. General Casualty Co. of Wisconsin*, 184 Wis. 2d 750, 517 N.W.2d 463 (1994).