Johnson Controls, Inc., Plaintiff-Appellant,†

v.

Employers Insurance of Wausau, a mutual company (f/n/a Employers Mutual Liability Insurance Company of Wisconsin), Affiliated FM Insurance Company, AIU Insurance Company, Allstate Insurance Company (as successor to Northbrook Excess and Surplus Insurance Company), American Employers' Insurance Company, American Home Assurance Company, American Motorists Insurance Company, Central National Insurance Company of Omaha, Employers Mutual Casualty Company, Employers Reinsurance Corporation, Federal Insurance Company, First State Insurance Company, Granite State Insurance Company, Highlands Insurance Company, Landmark Insurance Company, London Market (certain underwriters at Lloyd's London and London Market Insurance Companies), National Union Fire Insurance Company of Pittsburgh, PA, Northbrook Excess and Surplus Insurance Company (as predecessor to Allstate Insurance Company), Puritan Insurance Company (f/n/a Manhattan Fire and Marine Insurance Company), Stonewall Insurance Company, Transamerica Premier Insurance Company, Travelers Indemnity Company, United National Insurance Company, Zurich Insurance

† Petition to review granted 4-22-02.

Company, International Insurance Company, and Westchester Fire Insurance Company, Defendants-Respondents,

ALLIANZ UNDERWRITERS INSURANCE COMPANY, American Centennial Insurance Company, American Insurance Company, Associated International Insurance Company, California Union Insurance Company, Continental Insurance Company, Fireman's Fund Insurance Company, Harbor Insurance Company, North Star Reinsurance Corporation, and Republic Insurance Company, Defendants.

Court of Appeals

*No. 01–1193. Submitted on briefs December 4, 2001.—Decided December 27, 2001.*

2002 WI App 30

(Also reported in 640 N.W.2d 205.)

324

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Matthew J. Flynn, Jeffrey O. Davis* and *Keith A. Bruett*, of *Quarles & Brady LLP*, Milwaukee and *John P. Kennedy* of *Johnson Controls, Inc.*, Milwaukee.

On behalf of the defendant-respondent First State Insurance Company, the cause was submitted on the brief of *Paul J. Pytlik* and *Michelle M. Stoeck* of *Hills Legal Group, Ltd.*, Waukesha.

On behalf of the defendant-respondent Employers Insurance of Wausau, the cause was submitted on the brief of *Timothy J. Muldowney* and *Todd G. Smith* of *La Follette Godfrey & Kahn*, Madison and *Keith A. Dotseth* and *Patrick J. Boley* of *Larson King, LLP*, St. Paul, Minnesota and *Michael J. Cohen* of *Meissner Tierney Fisher & Nichols, S.C.*, Milwaukee.

On behalf of the defendant-respondent Transamerica Premier Insurance Company, the cause was submitted on the brief of *Edwin J. Hull, III* and *David P. Cutler* of *Cutler & Hull*, Chicago, Illinois.

On behalf of the defendant-respondent American Employers' Insurance Company, the cause was submitted on the brief of *Robert C. Moore* and *Christian D. Ambler* of *Stone & Moore, Chartered*, Chicago, Illinois.

On behalf of the defendants-respondents American Home Assurance Company, AIU Insurance Company, Granite State Insurance Company, Landmark Insurance Company, and National Union Fire Insurance Company of Pittsburgh, PA, the cause was submitted on the brief of *Blaise S. Curet* of *Sinnott, Dito, Moura & Puebla P.C.*, San Francisco, California and *Jeffrey A. Schmeckpeper* of *Kasdorf, Lewis & Swietlik, S.C.*, Milwaukee.

On behalf of the defendant-respondent The Travelers Indemnity Company, the cause was submitted on the brief of *Barry R. Ostrager, David J. Woll* and *Jonathan K. Youngwood* of *Simpson Thacher & Bartlett*, New York, New York and *Janice A. Rhodes* of *Kravit, Gass, Hovel & Leitner, S.C.*, Milwaukee.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. WEDEMEYER, P.J. Johnson Controls, Inc. appeals from an order and a judgment wherein the trial court found that no insurance coverage existed for twenty-one environmentally contaminated landfill sites. Johnson Controls claims the trial court erred when it ruled that all of the sites at issue do not involve "damages." Johnson Controls concedes that ten of the twenty-one sites do not fall into a category which triggers insurance coverage, but argues that the remaining eleven sites should be covered by insurance. Because the trial court's findings of fact (that all twenty-one sites are not covered by the insurance policies) are not clearly erroneous, we affirm.

## I. BACKGROUND

¶ 2. In 1989, Johnson Controls brought suit against Employers Insurance of Wausau and a host of other insurance companies, seeking coverage for costs it incurred relating to the environmental cleanup of twenty-one contaminated landfill sites.[1] Before the suit was resolved, the Wisconsin Supreme Court decided *City of Edgerton v. General Casualty Co.*, 184 Wis. 2d 750, 517 N.W.2d 463 (1994). In *Edgerton*, the supreme court concluded that there was no coverage provided for an insured who cleans up an environmentally contaminated site which it either owns or does not own, pursuant to a government directive or request under the Comprehensive Environmental Response, Compen-

---

[1] The insurance policies involved are either primary or excess comprehensive general liability policies, and promise to defend and indemnify Johnson Controls as a result of its liability for "damages."

sation and Liability Act of 1980, 42 U.S.C. §§ 9601, *et seq.* ("CERCLA"), or its state counterparts. *Edgerton,* 184 Wis. 2d at 782–86.

¶ 3.   As a result, the insurance companies in this case filed motions seeking summary judgment. The trial court granted the motions and dismissed the case as to all sites. Johnson Controls appealed the various judgments and orders.

¶ 4.   We decided the appeal on October 13, 1998, and remanded the matter "for the entry of a global judgment, broken down into subparts that recite:   (1) the property involved; (2) the insurance company or companies and the relevant dates of their policies that relate to that property; and (3) the result required by this opinion." *Johnson Controls, Inc. v. Employers Ins. of Wausau,* Nos. 95–1796 & 95–2591, unpublished slip op. at 5 (Wis. Ct. App. Oct. 13, 1998) (*Johnson Controls* I). On remand, the trial court complied with our directive and found that elements were present at each of the twenty-one sites so that each fell into a category where no coverage was provided. Johnson Controls appeals from that order.

## II. DISCUSSION

■

¶ 5.   In the first appeal of this case, we set forth four categories to describe the sites and related situations involved.[2] The first category consists of an insured who is responsible for cleaning up the contamination at a site pursuant to a directive issued by a government under CERCLA or its state counterparts. The costs of this remediation are not "damages." *Edgerton,* 184 Wis.

---

[2] We borrow liberally from our earlier opinion in this matter.

2d at 782–86. Although Johnson Controls believes that *Edgerton* was decided wrongly, we are obligated to follow its dictates. There is no insurance coverage in connection with remediation of sites that fall under the first category.

¶ 6. The second category consists of an insured who is responsible for at least part of the contamination of a site that it does not own, but has not been directed by a government to remediate the site. A governmental agency has, however, directed others responsible for the contamination—either the site's owner or those who also polluted the property—to clean it up and they, in turn, sue the insured to recover the cleanup costs attributable to the insured. This situation is governed by *General Casualty Co. v. Hills*, 209 Wis. 2d 167, 561 N.W.2d 718 (1997), which held that an action by a non-governmental entity seeking those costs is a suit for "damages," for which there is coverage under the comprehensive general liability policies. *Id.* at 180. "[U]nlike *Edgerton,* neither the [Environmental Protection Agency] nor [Wisconsin Department of Natural Resources] have [sic] requested or directed [the insured/polluter] to develop a remediation plan or incur remediation and response costs under CERCLA or an equivalent state statute." *Id. See also Wisconsin Pub. Serv. Corp. v. Heritage Mut. Ins. Co.*, 209 Wis. 2d 160, 561 N.W.2d 726 (1997) (site contaminated by subcontractor's negligence; subcontractor not directed by government to remediate site; direct action against subcontractor's insurance carrier by party remediating the property pursuant to government cleanup directive; held:  suit for "damages"); *Spic & Span, Inc. v. Continental Cas. Co.*, 203 Wis. 2d 118, 552 N.W.2d 435 (Ct. App. 1996) (site contaminated by insured; insured not

directed by government to remediate site; action against insured by those remediating the property pursuant to government cleanup directive; held: suit for "damages"). Under *Hills*, there is insurance coverage in connection with this second category of sites.

¶ 7.  The third category presents a situation where the insured is responsible for at least part of the contamination of a site that it does not own, and *has* been directed by a government to remediate the site, but has not done so. The insured is sued by the government to recover money it spent to clean up the site. There is no insurance coverage in connection with the scenarios encompassed by category three. *Regent Ins. Co. v. City of Manitowoc*, 205 Wis. 2d 450, 463, 556 N.W.2d 405 (Ct. App. 1996) (holding that where the government sues "an insured to recover incurred cleanup costs under § 107(a)(4)(A) of the [CERCLA] . . . or to impose a plan for remediation, that action is not a 'suit for damages' but is, rather, a suit for 'equitable monetary relief.' "). Johnson Controls argues that the supreme court's decision in *Hills* overruled *Regent*. We rejected this argument when we first considered the appeal, and we reject it again here for the reasons explained in our earlier opinion.[3] As noted, the vitality of *Regent* was reaffirmed post- *Hills* by *Hydrite Chemical Co. v. Aetna Casualty & Surety Co.*, 220 Wis. 2d 26, 39 n.5, 582 N.W.2d 423 (Ct. App. 1998).

---

[3] We also admonish Johnson Controls for raising many of the same issues which this court already decided in *Johnson Controls, Inc. v. Employers Ins. of Wausau*, Nos. 95–1796 & 95–2591, unpublished slip op. (Wis. Ct. App. Oct. 13, 1998). Our resolution of those issues was final for purposes of the litigation in this matter as law of the case.

¶ 8.  The fourth category encompasses situations where the insured is responsible for at least part of the contamination of a site that it does not own, and has been directed by a government entity to remediate the site, but has not done so. The insured is sued by the site's owner or others also responsible for the contamination who cleaned up the site at the government's direction. There is no insurance coverage for sites that are classified as category four.

¶ 9.  In categories three and four, unlike in two, a property owner is not seeking "legal damages" for injury to its property by one who has either caused or contributed to the pollution. Rather, the government and property owners forced by the government to clean up contamination allegedly caused by Johnson Controls are seeking what *Edgerton* noted was "equitable monetary relief," that is, recompense for monies spent in complying with the nation's environmental-protection laws—*money that would have been spent by Johnson Controls if it had complied with the government's cleanup directives. Edgerton*, 184 Wis. 2d at 784 ("Response costs assigned either under CERCLA or secs. 144.442(8) and (9), Stats., are, by definition, considered to be equitable relief and reflect a congressional intent to differentiate between cleanup or response costs under 42 U.S.C. sec. 9607(a)(4)(A) and damages for injury, destruction, or the loss of natural resources under 42 U.S.C. sec. 9607(a)(4)(C).").

¶ 10.  On remand from this court, the trial court found that all twenty-one sites at issue fall into categories one, three or four. The trial court found that none of the sites fell into category two, and thus, there was no insurance coverage. Our review is limited to whether

the trial court's findings of fact are clearly erroneous. WIS. STAT. § 805.17(2) (1999–2000).

## A. Category One.

¶ 11.   The trial court found that the following sites fell under category one because Johnson Controls received a government directive and then either complied or paid its portion of the cleanup costs:   (1) Bergsoe Metal Corporation; (2) NL-Dallas; (3) Tonolli Corporation; (4) NL-Pedricktown; (5) National Steel & Tube Distributors, Compton, CA; (6) Lakeland Disposal Services, Inc.; (7) JCI-Atlanta; (8) Bay Drums; (9) Maxey Flats Nuclear Disposal; (10) JCI-Owosso; (11) NL-Atlanta (National Smelting & Refining); (12) USS Lead Refinery, Inc.; (13) Bennington Landfill; and (14) JCI-Goshen. Johnson Controls argues that the trial court mischaracterized only four sites:   Bay Drums, Bennington Landfill, Tonolli Corporation and NL-Pedricktown.

### 1. Bay Drums.

██

¶ 12.   Johnson Controls argues that the trial court erred in finding that Bay Drums fell under category one. It contends that the only reason Bay Drums was found to be a category one site was because no lawsuit was filed. According to the trial court's order, it found Bay Drums fell into category one because "[a] notice of potential liability was sent from the EPA to [Johnson Control's subsidiary] dated February 2, 1988. No lawsuit has been filed." Johnson Controls contends that because other parties cleaned up the site in response to the government directives, and then negotiated a settlement with it before suit was filed, it becomes a category

two site. We disagree. The trial court's findings here are not clearly erroneous. Johnson Controls received a governmental directive to clean up the site, and eventually shared in its portion of the cleanup costs.

¶ 13. If we were to categorize this factual scenario as category two, Johnson Controls would be rewarded for standing back and allowing other parties to clean up a site that the government indicated Johnson Controls was, in part, responsible for cleaning. Such a ruling would produce the absurd result of rewarding one who does nothing (with insurance coverage), and punishing the vigilant who undertake to comply with the environmental authorities.

2. Bennington Landfill.

■

¶ 14. Johnson Controls argues that Bennington Landfill is actually a category two site, and that the reason the trial court found it to be a category one is that no suit was filed. The trial court's order indicated Bennington is a category one site because a "[g]eneral request for information was sent to JCI from the EPA on August 29, 1990. JCI entered into an Administrative Consent Order in 1991. No lawsuit has been filed." The record supports these findings and, therefore, the trial court did not err when it found Bennington most appropriately fell under category one.

3. Tonolli Corporation.

■

¶ 15. Johnson Controls makes a similar argument with respect to the Tonolli site; i.e., the trial court mistakenly found it to be category one because no lawsuit was filed. Again, we turn to the trial court's

order, wherein it states: "JCI was informed by the EPA in various letters dated April 9, 1987, January 27, 1988 and August 12, 1988, that it had been identified as a potentially responsible party. No lawsuit has been filed against JCI." The record supports these findings.

### 4. NL-Pedricktown.

██

¶ 16. Finally, Johnson Controls argues that the trial court made the same mistake with regard to NL-Pedricktown. Again, the trial court was not mistaken. In its order, the trial court found:

> Globe Union received a letter requesting information on site use from the EPA, dated October 6, 1987. Although a lawsuit was filed by NL Industries, Inc., that lawsuit was voluntarily dismissed by NL in the fall of 1991. JCI did not pay NL for any response costs and Wausau provided a defense, under a reservation of rights agreement, to the claim. An Administrative Order was issued by the EPA on April 1, 1992 to various PRPs, including JCI, to implement remediation plans. No lawsuits have been filed after NL's abandonment of its lawsuit.

The trial court's findings are supported by the record.

¶ 17. In all of these instances, Johnson Controls tries to ignore the contact from the EPA or governmental agency, by trying to argue that the contact was not a "directive," or that § 107 CERCLA cost recovery actions *do* involve covered damages. In support of this argument, Johnson Controls points out that although *City of Manitowoc* held that a § 107 action did not involve a legal "damages" case, the suit in *Hills* was initiated via § 107 and thus, must have overruled *City of Manitowoc*. We do not agree. The distinction in *Hills* was that the gas station owner had not received any direc-

tive from a government agency as to his potential liability. The suit against Hills was, among other things, one for contribution from other third parties who had been sued by the government, which sought declaratory judgment and response costs. *Hills*, 209 Wis. 2d at 172. The distinguishing factor that our supreme court prescribed in this decision was simple: if the government has contacted you with respect to your potential liability for contamination at a landfill site, whether you clean it up immediately or wait to be sued to do so, you cannot make a claim for "damages." *Id.* at 182. Rather, this claim is for "equitable monetary relief." *Regent*, 205 Wis. 2d at 463. There is no insurance coverage. Although this may seem like somewhat of an arbitrary distinction to some, this is the law set by our supreme court and we are obligated to apply this law.[4]

*B. Category Three.*

¶ 18. The trial court found that the following sites fell into category three because Johnson Controls received a government directive, failed to fully comply, and then was sued by the government: (1) Keefe Environmental Services, Inc.; (2) Auto-Ion; (3) NL-Granite City; (4) Union Scrap Iron & Metal Company, Inc.; and (5) Delaware Sand & Gravel.

---

[4] It is interesting to note that the difference in outcome between *City of Edgerton v. General Casualty Co.*, 184 Wis. 2d 750, 517 N.W.2d 463 (1994) and *General Casualty Co. v. Hills*, 209 Wis. 2d 167, 561 N.W.2d 718 (1997) may have resulted in part because in *Edgerton*, the supreme court failed to consider the expectations of the insured; whereas in *Hills*, such expectation was afforded generous consideration. *Hills*, 209 Wis. 2d at 183.

### 1. Keefe Environmental Services, Inc.

■■

¶ 19.   Johnson Controls contends that Keefe is a *category two site* because a *group of private parties who* had been sued by the United States for recovery of response costs sued Johnson Controls. Thus, Johnson Controls argues this is akin to *Hills*. The trial court found otherwise:

> A letter from the Attorney General of the State of New Hampshire to Globe Union, Inc., dated March 17, 1982 identified JCI as a potentially responsible party at the site which is owned by a third party. A complaint, filed May 5, 1989 . . . seeks enforcement of the PRPs' already existing equitable obligations to participate in remediation efforts.

These facts are supported by the record. Unlike *Hills*, Johnson Controls received a PRP letter from the State of New Hampshire. Thus, the Keefe site is not akin to the *Hills* site.

### 2. Auto-Ion.

■■

¶ 20.   Johnson Controls contends that it never ignored a government directive to clean up this site; thus, it cannot be a category three site. The trial court found:

> A PRP letter was sent from the EPA to Penn Controls, Inc. c/o Johnson Controls, dated November 28, 1984. The government filed a complaint on August 23, 1990 raising a direct claim against JCI for reimbursement of response costs and seeking reimbursement for response costs and seeking enforcement of a remediation plan. The site is owned by a third party.

These facts are supported by the record. These facts make Auto-Ion a category three site.

### 3. NL-Granite City.

■

¶ 21. Johnson Controls argues that NL-Granite City is both a category three site and a category two site. Johnson Controls concedes that it did receive a § 106 UAO in 1990 and failed to comply with it. Subsequently, the EPA filed suit against Johnson Controls and the matter was resolved. Johnson Controls contends that $26,458.07 of the costs was incurred prior to the date of the UAO, and that amount should be covered by insurance. The trial court found otherwise:

> A General Notice of potential liability letter was sent from the EPA to JCI, dated *November 28, 1989,* and a Special Notice letter was sent from the EPA to JCI dated June 25, 1990. A Section 106 order was issued on November 30, 1990 and on July 31, 1991 U.S. filed suit directly against JCI and various other parties . . . for cost recovery and enforcement of the Administrative Order.

(Emphasis added). These findings are supported by the record. Johnson Controls cannot be expected to be rewarded with insurance coverage for costs incurred before the UAO simply because it ignored other letters from the government.

### 4. Union Scrap Iron & Metal Company, Inc. and Delaware Sand & Gravel.

¶ 22. The trial court found that both of these sites fell into category three because the United States joined Johnson Controls as a party in an ongoing CERCLA cost recovery action. The record supports these findings.

*C. Category Four.*

¶ 23. The trial court found that the following sites were category four sites because Johnson Controls received a government directive, failed to fully comply, and then was sued: (1) Hunt's Disposal Landfill; and (2) NL-Portland (Gould).

¶ 24. Johnson Controls argues that Hunt's Disposal should be a covered site because the costs it paid constituted legal damages as "substitutionary, monetary relief." The trial court found otherwise:

> A Special Notice Letter dated July 31, 1991 was sent from the EPA to JCI requesting that JCI participate in the cleanup. JCI's potential liability arose separately from the use of the site by its Controls Group and its Globe Union operations. JCI participated and paid for response costs on behalf of its Controls Group but refused to pay on behalf of Globe Union. The PRP's [sic] brought a lawsuit against JCI for the Globe Union share in April, 1993 seeking to enforce Globe Union's already existing obligation to participate in the remediation efforts.

These facts are supported in the record. This is a category four site.

¶ 25. Johnson Controls argues that NL-Portland (Gould) is both a category one site and a category two site. The trial court found it fell into category four because:

A notice of potential liability was sent from the EPA to JCI, in January 1991 and a Special Notice Letter was sent from the EPA to JCI in July 1991. In January 1992, JCI received an Administrative Order from the EPA requiring it and the other PRP's to implement the cleanup plan selected by the EPA. JCI allegedly refused to participate in the cleanup as required by the Administrative Order. As a result, one of the PRP's [sic] (Gould) filed a lawsuit to enforce the PRP's already existing equitable obligation to participate in the remediation plan.

The trial court's findings are supported by the record.

### III. CONCLUSION

¶ 26. In sum, we conclude that the trial court did not err in finding that all twenty-one sites involved in this case fall into categories one, three, or four, and as a result, costs incurred at the sites are not "legal damages" entitled to insurance coverage under the CGL policies involved. Because we have so concluded, it is not necessary for us to address Wausau's counterclaim based on the pollution exclusion. Further, we need not address specifically the arguments of the additional (excess) insurance companies involved because we have affirmed the trial court's order that none of the sites involved here trigger coverage.

*By the Court.*—Judgment and order affirmed.