HYDRITE CHEMICAL CO., and Avganic Industries, Inc., Plaintiffs-Appellants,†

v.

The AETNA CASUALTY & SURETY CO., Affiliated Insurance Co., n/k/a Affiliated FM Insurance Co., American Casualty Co. of Reading, PA., American Motorist Ins. Co., Canadian Universal Ins. Co., Chicago Insurance Co., Continental Casualty Co., First State Ins. Co., First State Underwriters Agency of New England Reinsurance Corp., a/k/a New England Reinsurance Corp., Granite State Insurance Co., Great American Surplus Lines Insurance Co., a/k/a American Empire Surplus Lines Ins. Co., The Home Indemnity Company, Home Insurance Company, Integrity Insurance Company in Liquidation, Samuel F. Fortunato, Commissioner of Insurance of the State of New Jersey, and Michael Miron, in his capacity as Liquidator of Integrity Insurance Company, International Surplus Lines Ins. Co., Interstate Fire & Casualty Co., Northbrook Excess & Surplus Ins. Co., as predecessor to Allstate Insurance Company, Old Republic Ins. Co., Transcontinental Insurance Co., United States Fire Ins. Co., Walbrook Insurance Company Limited, Certain Underwriters at Lloyd's of London, and other companies, Defendants-Respondents.

Court of Appeals

*Nos. 94–0032, 95–2840, 97–0719. Submitted on briefs February 11, 1998.—Decided May 7, 1998.*

†Petition to review denied.

(Also reported in 582 N.W.2d 423.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Raymond F. Krueger, David V. Meany* and *Douglas P. Dehler* of *Michael, Best & Friedrich* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *Todd A. Becker, Richard G. Niess* of *Coyne, Niess, Schultz, Becker & Bauer, S.C.* of Madison, and *James K. Horstman, Anthony P. Katauskas* and *Mary A. Sliwinski* of *Williams & Montgomery, Ltd.*, of Chicago.

On behalf of the defendants-respondents, The Aetna Casualty and Surety Company, n/k/a Travelers Casualty and Surety Company, the cause was submitted on the brief of *Thomas R. Schrimpf* and *Susan R. Tyndall* of *Hinshaw & Culbertson* of Milwaukee.

Before Dykman, P.J., Roggensack and Deininger, JJ.

DYKMAN, P.J. Hydrite Chemical Co. and Avganic Industries, Inc. (hereinafter "Hydrite") appeal from orders for summary judgment dismissing their insurance coverage action against the defendant insur-

ance companies. Hydrite argues that the trial court erred in concluding that the insurers do not have a duty to indemnify Hydrite for the cost of investigating and remediating soil and groundwater contamination in the vicinity of Hydrite's chemical facility in Cottage Grove, Wisconsin. We agree with the trial court that *City of Edgerton v. General Cas. Co.*, 184 Wis. 2d 750, 517 N.W.2d 463 (1994), precludes coverage. Accordingly, we affirm the trial court's orders granting the insurers' motions for summary judgment.

Hydrite also appeals from an order compelling it to disclose certain documents to the insurers. Hydrite argues that the documents are protected by the attorney-client privilege and work product doctrine. We have already concluded that the trial court properly granted the insurers' motions for summary judgment. Because the insurers have established that they are entitled to judgment as a matter of law without the withheld documents, the question of whether Hydrite properly withheld the documents is moot. Therefore, we dismiss the appeal from the order compelling discovery.[1]

## BACKGROUND

Effective July 30, 1989, the United States Environmental Protection Agency (EPA) issued the federal portion of a Resource Conservation and Recovery Act Hazardous Waste License (RCRA License) to Hydrite for its Cottage Grove facility. The license required Hydrite to develop and implement a corrective action plan to address environmental damages to property

---

[1] Because we conclude that the trial court properly granted summary judgment on the merits of the case, Hydrite is no longer required to comply with the trial court's order compelling discovery.

caused by the release of spent industrial solvents from an old drum storage area at the facility.

Hydrite requested indemnification from the defendant insurers for the sums paid and to be paid for the environmental investigation and remediation at the Cottage Grove facility, including the development and implementation of the corrective action plan imposed by the RCRA License. The insurers denied coverage. In April 1991, Hydrite filed a lawsuit against the insurers, seeking coverage for the costs incurred during the investigation and remediation of the contamination at the Cottage Grove facility.

During discovery, Hydrite withheld certain documents under the attorney-client privilege and work product doctrine. Hydrite produced a privilege log identifying the documents it withheld. The insurers moved to compel the production of many of the documents. The trial court ordered Hydrite to produce a number of them. We granted Hydrite's petition for leave to appeal the discovery order. (Appeal No. 94–0032.)

After briefing on the interlocutory appeal was complete, the Wisconsin Supreme Court decided *City of Edgerton v. General Cas. Co.*, 184 Wis. 2d 750, 517 N.W.2d 463 (1994). Certain insurers moved the court of appeals to remand the case so that the trial court could apply the holding of *Edgerton*. We did so, staying the appeal and directing the trial court to consider the *Edgerton* issues on remand.

On remand, both Hydrite and the insurers moved for summary judgment. The trial court granted the insurers' motion and dismissed Hydrite's complaint, concluding that, under the holding of *Edgerton*, the insurers did not have a duty to defend or indemnify Hydrite. Hydrite appealed. (Appeal No. 95–2840.)

30

Hydrite moved this court to remand the case again for the trial court to resolve the *Edgerton* issue as to certain insurers that did not join in the first motion for summary judgment. We granted Hydrite's motion. On remand, Hydrite and the insurers stipulated to the terms of certain "lost policies." The trial court again concluded that *Edgerton* precluded coverage and granted summary judgment to the remaining insurers. Hydrite appealed. (Appeal No. 97–0719.) All three appeals have been consolidated before this court.

## STANDARD OF REVIEW

We review summary judgments *de novo*, using the same methodology as the trial court. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–16, 401 N.W.2d 816, 820 (1987). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* § 802.08(2), STATS.; *Germanotta v. National Indem. Co.*, 119 Wis. 2d 293, 296, 349 N.W.2d 733, 735 (Ct. App. 1984).

In deciding the motion, the trial court first considers the pleadings to determine whether the complaint states a claim for which relief may be granted and whether the answer states a defense. *See State Bank v. Elsen*, 128 Wis. 2d 508, 511, 383 N.W.2d 916, 917 (Ct. App. 1986). If they do, the moving party's evidentiary facts are examined to determine whether that party has made a *prima facie* case for summary judgment. If the moving party has made a *prima facie* case, the opposing party's affidavits and proofs are considered to determine whether a genuine issue exists as to any

material fact. *Id.* If a material factual issue exists, summary judgment is inappropriate. *Id.*

## DISCUSSION

Hydrite argues that the trial court misconstrued *City of Edgerton v. General Cas. Co.*, 184 Wis. 2d 750, 517 N.W.2d 463 (1994), and inappropriately granted summary judgment. The insurers contend that the trial court properly granted them summary judgment under the supreme court's holding in *Edgerton*. Accordingly, we will start our analysis with *Edgerton*.

In *Edgerton*, Edgerton Sand & Gravel, Inc. (ES&G) owned property that the City of Edgerton (City) leased and used as its landfill from 1968 to 1984. *Id.* at 758 & n.5, 517 N.W.2d at 468. The groundwater at the site became contaminated. *Id.* at 759, 517 N.W.2d at 468. In 1989, the City and ES&G each received a letter from the EPA requesting them to respond to a request from the Wisconsin Department of Natural Resources (DNR) to provide information regarding the disposal of hazardous substances at the landfill. *Id.* at 759–60, 517 N.W.2d at 468. In 1990, they each received a letter from the DNR requesting them to propose a plan for remediation of the site and any problems associated with it. *Id.* at 760, 517 N.W.2d at 468.

The City and ES&G forwarded these letters to their insurance carriers, and ES&G specifically requested its insurers to pay any costs incurred regarding the site and to provide a defense. *Id.* at 760–62, 517 N.W.2d at 468–69. The insurers refused to provide coverage or a defense. *Id.* at 762, 517 N.W.2d at 469. Both the City and ES&G filed a declaratory judgment action against the insurers, seeking a determination that the insurers had a duty to defend and indemnify them for

any liability arising out of DNR or EPA claims, actions or suits involving the contaminated site. *Id.*

In *Edgerton*, the relevant insurance policies read:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
> A. bodily injury or
> B. property damage
>
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage . . . .

*Id.* at 769, 517 N.W.2d at 472 (emphasis omitted).

█

The supreme court held that "damages" as used in insurance policies means legal damages, generally pecuniary in nature, designed to compensate for past wrongs or injuries. *Id.* at 783, 517 N.W.2d at 478. "Damages" does not include the cost of complying with an injunctive decree. *Id.* The court noted that remediation and response costs assigned under CERCLA[2] and equivalent state statutes[3] are, by definition, considered to be equitable relief. *Id.* at 784, 517 N.W.2d at 478. The court continued:

> [A]s an equitable form of relief, response costs were not designed to compensate for past wrongs; rather, they were intended to deter any future contamina-

---

[2] The Comprehensive Environmental Response, Compensation and Liability Act of 1980, also known as "Superfund." *See City of Edgerton v. General Cas. Co.*, 184 Wis. 2d 750, 756 n.2, 517 N.W.2d 463, 467 (1994).

[3] *See* § 144.442(8)–(9), STATS.

tion by means of injunctive action, while providing for remediation and cleanup of the affected site. This type of relief is distinct from that which is substitutionary—monetary compensation provided to make up for a claimed loss.

*Id.* at 785, 517 N.W.2d at 478 (citation omitted).

According to Hydrite, most of the comprehensive general liability (CGL) insurance policies at issue in this case contain language similar to the following:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
 A. Bodily Injury or
 B. Property Damage

to which this insurance applies . . . .

█ This language is identical to the policy language construed in *Edgerton*. And like the insureds in *Edgerton*, Hydrite was not seeking reimbursement from its insurers for "legal damages." Under the terms of the RCRA License, Hydrite was not required to pay the EPA substitutionary, monetary relief to compensate for past wrongs. Instead, Hydrite was required to develop and implement a corrective action plan to address environmental contamination at the Cottage Grove facility. Hydrite sought indemnification from its insurers for the cost of its environmental investigation and remediation at the Cottage Grove facility, including the development and implementation of the corrective action plan pursuant to the RCRA License. These costs are not "legal damages" under *Edgerton*. Therefore, we conclude that the insurers were not required to indemnify Hydrite under the terms of the insurance policies.

Hydrite argues that the facts of this case are distinguishable from the facts of *Edgerton*, and therefore it contends that *Edgerton* is not controlling. In support of its argument, Hydrite relies primarily on *General Cas. Co. v. Hills*, 209 Wis. 2d 167, 561 N.W.2d 718 (1997), and *Wisconsin Pub. Serv. Corp. v. Heritage Mut. Ins. Co.*, 209 Wis. 2d 160, 561 N.W.2d 726 (1997) (hereinafter *WPS*). Before we address Hydrite's arguments, we will summarize *Hills* and *WPS*.

In *Hills*, Donald Hills contracted with Arrowhead Refining Company to pick up waste from his service station. *Hills*, 209 Wis. 2d at 171, 561 N.W.2d at 720. Arrowhead would then transport the waste to its waste oil recycling site. *Id.* After the EPA determined that Arrowhead's recycling activities had contaminated the site, the United States filed suit against Arrowhead, seeking declaratory relief and recovery of response costs. *Id.* at 172, 561 N.W.2d at 721. Arrowhead then filed a third-party complaint against Hills, seeking recovery for response costs associated with the site. *Id.*[4]

Hills' insurer filed a declaratory judgment action, requesting the court to determine that it had no duty to defend or indemnify Hills. *Id.* at 173, 561 N.W.2d at 721. Hills counterclaimed, asserting that the insurer breached its contractual duties and acted in bad faith. *Id.* at 173–74, 561 N.W.2d at 721. The policy between Hills and his insurer included language equivalent to the language construed in *Edgerton. See id.* at 173, 561 N.W.2d at 561. The insurer moved for summary judgment, arguing that because the suit against Hills

---

[4] In addition to Arrowhead Refining Company and Donald Hills, the action included fourteen additional defendants and hundreds of additional third-party defendants. For the sake of simplicity, we refer only to Arrowhead and Hills.

sought recovery for response costs, it did not seek "damages" under the holding of *Edgerton. Id.* at 174, 561 N.W.2d at 721.

The supreme court first noted that whether a remedy sought constitutes damages does not depend upon the form of the action, but upon the nature of the remedy sought. *Hills*, 209 Wis. 2d at 178, 561 N.W.2d at 723. Damages "are remedial in nature, not preventive." *Id.* The court concluded that the relief Arrowhead sought from Hills was substitutionary, monetary relief to compensate for past wrongs, not relief designed to prevent future harm. *Id.* at 181, 561 N.W.2d at 724. Therefore, the court concluded that Arrowhead was seeking "damages" from Hills as that term was used in the insurance policies at issue. *Id.* The court further stated that its "conclusion that Arrowhead is seeking legal damages to compensate Arrowhead for past wrongs is in accord with established Wisconsin precedent . . . that the cost of repairing and restoring damaged property and water to its original condition is a proper measure of compensatory damages." *Id.* (emphasis omitted).

In *WPS*, WPS hired Helmreich Utility Construction to install gas service to a building owned by the Tomahawk School District. *WPS*, 209 Wis. 2d at 164, 561 N.W.2d at 728. While installing the service line, Helmreich cut an underground fuel oil pipe, causing the surrounding soil to become contaminated. *Id.* The DNR sent letters to Tomahawk and WPS, ordering them to investigate and remediate the property. *Id.* WPS paid all bills without admitting responsibility for them and then commenced a direct action against Helmreich's insurer. *Id.* The insurer filed a motion for summary judgment, contending that reimbursement for investigation and remediation costs was not "dam-

ages" covered by the policy. *Id.* at 164–65, 561 N.W.2d at 728. The supreme court concluded that, like *Hills,* *WPS* involved parties other than the EPA or DNR seeking recovery for damages that the insured negligently caused. *Id.* at 165, 561 N.W.2d at 728–29. Accordingly, the court concluded that *Hills* was controlling and that the action sought "damages" under Helmreich's insurance policy. *Id.* at 165, 561 N.W.2d at 729.

Hydrite first argues that it is seeking to recover the cost of restoring damaged property and water to its original condition, which *Hills* recognized as a measure of compensatory damages. But of relevance in *Hills* was not whether the sums the insured sought *from the insurer* would be considered damages; rather, the focus was on whether the remedy sought *from the insured* would be considered damages. In *Hills,* substitutionary, monetary relief to compensate for past wrongs was sought from the insured, and therefore, the sums sought from the insured were considered to be damages covered by the policy. Here, however, the EPA did not seek substitutionary, monetary relief from Hydrite. Instead, the EPA, through the RCRA License, required Hydrite to implement necessary corrective measures to address environmental damages to the Cottage Grove facility. The remedy sought by the EPA is more akin to the equitable remedy sought by the DNR in *Edgerton* than the substitutionary remedy sought in *Hills.* Accordingly, *Hills* does not affect our conclusion that Hydrite does not seek indemnification for "damages" from its insurers.

Hydrite also argues that it is seeking recovery for "damages" because its claim involves damage to third-party property. Hydrite contends that it reasonably expected coverage for damage caused to third-party property. In its complaint, Hydrite notes that soil and

groundwater contamination has extended beyond the drum storage area and beyond the boundary of the Cottage Grove facility. And in its affidavits supporting its motion for summary judgment, Hydrite asserts that it was addressing contamination to neighboring properties through site investigation and the design of remedial systems.

Hydrite argues that *Edgerton* is distinguishable because it involved damage to property owned by the insured. In *Hills* and *WPS*, on the other hand, the insured did not own the contaminated property. The *Hills* court distinguished its case from *Edgerton* in part because the contaminated property in *Hills* was not owned by the insured, and therefore it would not fall within the owned-property exclusion of Hills' insurance policies. *See Hills*, 209 Wis. 2d at 180, 561 N.W.2d at 724.

We reject Hydrite's argument because we believe that this distinction between *Edgerton* and *Hills* is of marginal significance here. The *Edgerton* court did not even reach the issue of whether the owned-property exclusion applied. *See Hills*, 209 Wis. 2d at 180 n.14, 561 N.W.2d at 724. After the *Edgerton* court decided the threshold issue that the DNR's letters to the insureds did not constitute a "suit seeking damages" triggering the insurers' duty to defend, it was unnecessary for the court to consider the application of the owned-property exclusion. *See Edgerton*, 184 Wis. 2d at 757–58, 517 N.W.2d at 467–68. Likewise, if Hydrite's costs incurred in implementing the corrective action plan are not damages triggering the insurers' duty to indemnify, it is irrelevant whether the insurance policies also include owned-property exclusions.

The distinction between *Hills* and *Edgerton* that is most important here is that in *Edgerton*, the DNR

directed the insureds to develop a remediation plan and incur remediation and response costs; while in *Hills*, parties other than the EPA or DNR sought compensatory, monetary relief from the insured for alleged past contamination of property. The *Hills* court recognized the relevance of this distinction. The court stated:

> [U]nlike *Edgerton*, neither the EPA nor DNR have requested or directed Hills to develop a remediation plan or incur remediation and response costs under CERCLA or an equivalent state statute. . . .
>
> . . . .
> . . . [A] reasonable insured in the position of Hills would interpret the phrase "as damages" to include coverage for a claim, *brought by parties other than the EPA or DNR, which obligates him or her to pay monetary sums* because of the negligent contamination of property that does not fit within the owned-property exclusion, since this is the very reason that an individual purchases liability coverage.

*Hills*, 209 Wis. 2d at 180, 185, 561 N.W.2d at 724–25 (emphasis added).[5]

---

[5] *See also Regent Ins. Co. v. City of Manitowoc*, 205 Wis. 2d 450, 556 N.W.2d 405 (Ct. App. 1996). Although *Regent* was decided before the supreme court decisions in *Hills* and *WPS*, we believe its decision is consistent with *Hills* and *WPS*, and we find its analysis instructive. In *Regent*, the court analyzed several post-*Edgerton* cases, including the court of appeals decisions in *Hills* and *WPS*, and concluded:

> Distilled to their essence, [the post-*Edgerton* cases] merely hold that a lawsuit brought against an insured by a non-government third-party to recover money the third-party has spent or will spend because of the insured's contamination of property not owned, leased, or controlled by the insured is a "suit for damages" as that phrase is defined and applied by *City of Edgerton*. When,

Here, like the insureds in *Edgerton*, Hydrite was responding to a governmental directive when investigating and remediating its contaminated property; unlike the insureds in *Hills*, Hydrite was not responding to a demand for compensatory, monetary relief from a non-government third-party. Accordingly, we conclude that *Edgerton*, not *Hills*, controls.[6]

Hydrite also argues that several of the policies here are distinguishable from the policy construed in *Edgerton* because some of the policies do not confine coverage to "damages." For example, several policies require the insurer to indemnify the insured "for damages, direct or consequential and expenses." Hydrite argues that the amounts it seeks are "expenses" covered by these policies. In support of its argument, Hydrite relies on dictionaries that define "expenses" to mean, among other things, "costs."

We reject Hydrite's broad interpretation of the term "expenses" for the same reason that the *Edgerton* court rejected a broad interpretation of the term "damages." In *Edgerton*, the court stated:

however, either the United States or a state brings a lawsuit against an insured to recover incurred cleanup costs under [CERCLA], or to impose a plan for remediation, that action is not a "suit for damages" but is, rather, a suit for "equitable monetary relief."

*Regent*, 205 Wis. 2d at 462–63, 556 N.W.2d at 409 (footnote omitted).

[6] Hydrite also argues that it was not required to be the defendant to a legal action in order for its insurers to become obligated to indemnify it for "damages." We have already concluded that the expenditures for which Hydrite sought indemnification were not damages, regardless of whether a lawsuit had been filed. Because the issue of whether the insurers were required to indemnify Hydrite has been disposed of on other grounds, we do not reach this argument. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983).

[The] limited construction of the term "damages" is consistent with the basic grant of coverage in the insurance policies. The insurers agreed to pay "all sums which the insured shall become legally obligated to pay *as damages*." The insurers did not agree to pay "*all sums* which the insured shall become legally obligated to pay." The addition of "as damages" serves as a qualifier, a limit to coverage.

*Edgerton*, 184 Wis. 2d at 783–84, 517 N.W.2d at 478 (quoting *School Dist. v. Wausau Ins. Cos.*, 170 Wis. 2d 347, 369–70, 488 N.W.2d 82, 90 (1992)). The *Edgerton* court believed that if "damages" were given a broad interpretation, the phrase "as damages" would become surplusage because any expenses prior or incidental to litigation would be covered by the policies. *Edgerton*, 184 Wis. 2d at 784, 517 N.W.2d at 478.

Similarly, if we were to interpret "expenses" as equivalent to "costs," we would render the term "damages" in the policies surplusage because all damages would also be expenses covered by the policies. We must avoid a construction of the policy that would render portions of it meaningless or mere surplusage. *See Rockline, Inc. v. Wisconsin Physicians Serv. Ins.*, 175 Wis. 2d 583, 593, 499 N.W.2d 292, 297 (Ct. App. 1993). Therefore, we must avoid Hydrite's proposed construction.

Instead, we believe that the "expenses" covered by the policy are legal expenses incurred in defending a claim for damages. In the phrase "damages, direct or consequential and expenses" contained in the policy, it appears that "direct or consequential and expenses" defines what types of "damages" are covered: direct damages, consequential damages, and expenses incurred in defending a claim for damages. By using

this interpretation, we give effect to all words contained in the policy provision.[7]

Hydrite also argues that several policies that provide coverage for "ultimate net loss" are distinguishable from the policy construed in *Edgerton.* For example, one policy provides coverage "for damages, direct or consequential and expenses, all as more fully defined by the term 'ultimate net loss.' " The policy defines "ultimate net loss" as "the total sum which the insured, or any company as its insurer, or both, become obligated to pay by reason of . . . property damage claims . . ., either through adjudication or compromise." Under another policy, the insurer agreed "to pay on behalf of the insured the ultimate net loss . . . which the insured may sustain by reason of the liability imposed upon the insured by law, or assumed by the insured under contract," for property damage liability arising out of an occurrence. This policy defined "ultimate net loss" as:

(A) all sums which the insured is legally obligated to pay as damages whether by reason of adjudication or settlement, because of bodily injury, personal injury, property damage or advertising liability to which this policy applies and

---

[7] The court in *Owens-Corning Fiberglas Corp. v. American Centennial Ins. Co.*, 660 N.E.2d 770 (Ohio C.P. 1995), construed a similar insurance policy that required the insurer to indemnify the insured "for damages, direct or consequential and expenses." *Id.* at 800. The court concluded that "expenses" meant expenses incurred in defending claims. *Id.* Our conclusion is consistent with that court's holding. We do not rely on *Owens-Corning*, however, because the Ohio court considered case-specific testimony and policy language in reaching its conclusion that would be inappropriate to consider in this case.

(B) all expenses . . . incurred by or on behalf of the insured in the investigation, negotiation, settlement and defense of any claim covered by this policy or suit seeking damages excluding only the salaries of the insured's regular employees.

Again, we do not believe that these policies insure against the costs for which Hydrite is seeking indemnification. The first policy provides coverage "for damages, direct or consequential and expenses." We have already construed similar language as providing coverage only for expenses incurred in defending a claim for damages. And although the second policy states that "ultimate net loss" includes expenses incurred by the insured in investigating and defending claims, the claims for which the expenditures are incurred must be claims covered by the policy. Because the EPA's corrective action plan is not a claim covered by the policy, Hydrite is not entitled to recover its expenses incurred in complying with the corrective action plan.[8]

---

[8] Hydrite also argues that in the trial court's decision and order for summary judgment underlying Appeal No. 97–0719, the trial court erred in granting the insurers summary judgment on the grounds that no "occurrence" had taken place to trigger the insurers' duty to indemnify. Hydrite argues that the trial court erred in considering the "occurrence" issue because it was beyond the scope of the court of appeals' remand order.

We review summary judgments *de novo. See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). We have already concluded that the insurers were entitled to summary judgment because the sums sought by Hydrite are not "damages" under the holding of *Edgerton*. Therefore, we do not need to consider whether the trial court erred in considering the "occurrence" issue. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983).

In summary, we conclude that the insurance policies in question do not require the insurers to indemnify Hydrite for the expenditures for which Hydrite seeks reimbursement in its complaint. Accordingly, we affirm the trial court's orders granting summary judgment to the insurers.

*By the Court.*—Appeal No. 94–0032: Appeal dismissed; Appeal Nos. 95–2840 and 97–0719: Orders affirmed.

ROGGENSACK, J. *(dissenting)*. Because Hydrite has stated a sufficient claim and averred sufficient facts contending it has caused damage to the property of third-parties, which damage Hydrite would not have reasonably expected to be excluded from the insurers' duties to indemnify under the comprehensive general liability (CGL) policies it purchased, and because the issue of an occurrence as defined in the policies was not fairly before the circuit court at the summary judgment motion, I would reverse the circuit court on these two issues. Therefore, I respectfully dissent.

**Indemnification for Injury to Others.**

Hydrite moved for summary judgment, asserting that there was coverage under the CGL policies for injury to its own property and for injury it had caused to the property of others. Relying heavily on *City of Edgerton v. General Cas. Co. of Wisconsin*, 184 Wis. 2d 750, 517 N.W.2d 463 (1994), the majority affirms the dismissal of all Hydrite's claims against all of the defendant insurers, without analyzing whether the claims which arose out of injuries to the property of others should be treated differently under the CGL policies from claims based on injury to Hydrite's prop-

44

erty. The majority opinion focuses its attention on the RCRA license, which, as is discussed below, is not dispositive of whether coverage is excluded under the CGL policies. It also relies on the lack of a third-party lawsuit against Hydrite to distinguish *General Cas. Co. of Wisconsin v. Hills,* 209 Wis. 2d 167, 561 N.W.2d 718 (1997), a more recent case involving damages caused by pollutants, which I conclude is controlling precedent for claims under the CGL policies when third-party property damage is at issue.

Hydrite filed its action as one for declaratory judgment, asking, in part, that the circuit court determine the scope of the insurers' duties to indemnify under written contracts; therefore, this is not an appeal which must examine whether a lawsuit has been filed against Hydrite. The actual filing of a lawsuit by a third party is not a precondition to declaratory relief. Section 806.04, STATS., *Loy v. Bunderson,* 107 Wis. 2d 400, 407, 320 N.W.2d 175, 180 (1982). And, whether a lawsuit has been filed is not a precondition to determining whether injuries to the property of others caused by pollutants is excluded from indemnification under the contracts at issue. That question is solely a matter of contract interpretation, which is an appropriate task for a declaratory judgment action. *Hills,* 209 Wis. 2d at 174–75, 561 N.W.2d at 722.

As the first step in this review, I examined the initial complaint. It sought broad coverage that included payment for investigation and remediation on Hydrite's own property, which relief I agree is precluded by *Edgerton.* However, Hydrite's complaint also sought indemnification for losses sustained by third parties.[1] Additionally, Hydrite's motion for summary

---

[1] Paragraph 34 of the complaint states in relevant part:

judgment clearly focused one part of its claim for indemnification on injuries to third parties. In support of its motion, Thomas J. Miazga averred:

> Hydrite has spent money to address the past injury to the environment caused by this past release. . . . the investigations have documented that extensive contamination beyond the boundaries of the Cottage Grove facility was caused by the past release of spent organic chemicals. . . . Dale and Dwight Huston own approximately 50 acres of mostly undeveloped property which is located approximately 750 feet south of the Cottage Grove Facility. This property has been contaminated. . . . Property owned by the State of Wisconsin was damaged by the past release of spent organic chemicals. . . . Hydrite has a legal obligation under state and federal law to restore the properties by investigating and cleaning up the environmental injury which consists of contaminated groundwater and soil.

Miazga also stated that although Hydrite has spent money to prevent future harm, it is not seeking indemnification for those expenses, but rather it is seeking indemnification only for past injuries. Therefore, its claims in regard to injury to the property of others are remedial in nature, as were the claims described in *Hills*. The allegations in Hydrite's complaint and the

---

[A]pproximately 600 to 800 55-gallon drums at the old NCC drum storage area released their contents to the environment sometime after their arrival at the old NCC drum storage area and before the beginning of Hydrite's solvent reclamation operation. These releases into the environment contaminated . . . the soil and groundwater. Environmental damages to soil and groundwater have extended beyond the old NCC drum storage area at the Cottage Grove facility and *beyond the property owned or occupied by NCC, Hydrite and / or Avganic* during each of the respective policy periods. (Emphasis added.)

averments in Miazga's affidavit that Hydrite polluted the property of third parties are uncontroverted.

In order to determine whether coverage is excluded as the insurers contend, one must interpret the insurance contracts to ascertain the reasonable coverage expectations of Hydrite. Insurance contracts are interpreted by the ordinary maxims of contract construction. *Kuhn v. Allstate Ins. Co.*, 193 Wis. 2d 50, 60, 532 N.W.2d 124, 128 (1995). When coverage is at issue, courts must interpret the language of the insurance policy, as a reasonable insured would have understood the coverage afforded. *Hills*, 209 Wis. 2d at 175, 561 N.W.2d at 722. And, as the supreme court stated in *Hills*, when examining a coverage question, " 'classification based on the form of the action, as either equitable or legal, is irrelevant' to the determination of whether the remedy sought constitutes damages. Instead, the focus is on the nature of the remedy sought. Specifically, damages 'are remedial in nature, not preventive.' " *Id.* at 178, 561 N.W.2d at 723–24 (citations omitted).

The court in *Hills* also clarified that damages to a third-party's property caused by environmental pollutants for which remediation is required by CERCLA are to be treated no differently from damages caused by other means.

> [T]he owner of an underground storage tank, negligently caused a leak in the tank and thereby polluted Nischke's property, Nischke could recover the costs she expended to remediate her land in response to letters she received from the DNR.

*Id.* at 181–82, 561 N.W.2d at 725 (citing with approval the Court of Appeals decision in *Nischke v. Farmers & Merchants Bank & Trust*, 187 Wis. 2d 96, 120, 522

N.W.2d 542, 552 (Ct. App. 1996)). CERCLA, and its Wisconsin counterpart, have no effect on the construction of insurance policies or on the law of remedies.[2]

Here, Hydrite purchased CGL policies that did not list environmental pollutants as a coverage exclusion. A coverage limitation for polluting the property of others could have been made a condition of insurance. *See Donaldson v. Urban Land Interests, Inc.*, 211 Wis. 2d 224, 228, 564 N.W.2d 728, 730 (1997). However, there is no indication the parties bargained for that here. Furthermore, the recognized purpose of CGL insurance is to indemnify insureds for damage they cause to the property of others. *Sauk County v. Employers Ins. of Wausau*, 202 Wis. 2d 433, 443, 550 N.W.2d 439, 443 (Ct. App. 1996). The claims for indemnification under the contracts which I address in this dissent arise from injuries to others. Therefore, coverage should not have been excluded, simply because of the theory of liability.

Additionally, we have already concluded in *Robert E. Lee & Assocs., Inc.*, 206 Wis. 2d 509, 522, 557 N.W.2d 457, 462 (Ct. App. 1996), that contamination to the groundwater supply and to the land of others is not the type of damage precluded by *Edgerton*. Therefore, the RCRA license which required Hydrite to take certain

---

[2] "*See* 42 U.S.C. § 9652(d) ('Nothing in this Act shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants.'); Wis. Stat. § 144.442(11) ('No common law liability . . . for damages resulting from a site or facility is affected in any manner by this section. The authority, power and remedies provided in this section are in addition to any authority, power or remedy provided . . . at common law.')." *Hills*, 209 Wis. 2d at 182 n.15, 561 N.W.2d at 725 n.15.

actions is not determinative of whether third parties have been damaged. Our holding in *Robert E. Lee* is in accord with the directive of the supreme court in *Hills*, which explained, "It has long been the law of this state that the cost of repairing and restoring damaged property and water to its original condition is a proper measure of compensatory damages." *Hills*, 209 Wis. 2d at 181, 561 N.W.2d at 724 (citations omitted).

Therefore, I conclude that a reasonable insured in the position of Hydrite would not have expected that indemnification for injury it caused to the property of third parties by environmental pollutants would be excluded from coverage under the CGL policies. This conclusion is driven solely by what a reasonable insured in the position of Hydrite would have expected when it purchased these CGL policies.

## Occurrence.

Hydrite also claims the circuit court erred in summarily declaring that the toxic spills were not occurrences under the policies because no party had moved the court to decide that issue and because discovery had been precluded on the occurrence issue by the narrow discovery limits the court, itself, had established. The insurance companies do not disagree with those assertions in their brief. Therefore, I take them as admitted. *Schlieper v. DNA*, 188 Wis. 2d 318, 322, 525 N.W.2d 99, 101 (Ct. App. 1994).

Generally, circuit courts do not raise legal issues *sua sponte*. However, when they do, fairness requires that the parties have the opportunity to develop the relevant facts and to present legal arguments on the issue. *See State v. Holmes*, 106 Wis. 2d 31, 41, 315 N.W.2d 703, 708 (1982). Here, the circuit court did not allow the parties to brief the issue. Its decision on the

occurrence issue appears to have been a surprise to all parties. Therefore, I agree that Hydrite's position is well taken. Fairness required that this important issue be decided after allowing all parties to present their positions on it.

**Conclusion.**

Because I conclude that any injury Hydrite caused to the property of others is property damage which it would not reasonably have expected to be excluded from coverage under the GCL policies it purchased and because the parties did not have a fair opportunity to develop the facts and the law relevant to the occurrence determination, I respectfully dissent.